***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 *********** *Page 2 
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to joinder or non-joinder of parties.
4. Defendant-employer was a duly qualified self-insured on the date of injury.
5. Plaintiff sustaineded a compensable injury on April 25, 2002.
6. An employment relationship existed between plaintiff and defendant-employer during the relevant time period.
7. Plaintiff's average weekly wage was $478.00.
8. Plaintiff has been paid compensation consisting of indemnity in the total amount of $6,426.45 and $42,798.65 in medical compensation.
9. On October 20, 2004, Dr. Andrew Rudins placed plaintiff at maximum medical improvement with a 22% permanent partial impairment rating and permanent restrictions of lifting no more than 40 pounds occasionally, limited twisting, turning, stairs, and full squatting or kneeling.
10. Plaintiff returned to work for defendant-employer through 2006, at which time she voluntarily terminated her employment and is now employed with a different employer with no loss of wage earning capacity. *Page 3 
11. The issues before the Commission are:
 a. Has plaintiff received all the benefits to which she is entitled under the Act and, therefore, must elect payment of her rating since that is the only benefit to which she is entitled; and
 b. Is plaintiff entitled to any further benefits, including medical treatment; and
 c. Has plaintiff received any medical treatment since her release by Dr. Rudins on October 2, 2004.
12. Stipulated Exhibit 1, consisting of Industrial Commission forms and filings, medical records, and discovery, was received into evidence.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 52 years old. She worked for defendant-employer for 30 years.
2. On April 25, 2002, plaintiff sustained a compensable injury by accident in a fall from a ladder in the course and scope of her employment with defendant-employer. As the result of the fall, plaintiff sustained a torn ACL of the left knee, a fractured left ankle and a left hand injury. Defendant accepted the compensability of the claim by filing a Form 60 on May 25, 2002, and an amended Form 60 on August 30, 2002. Defendant provided indemnity and medical compensation, including left knee surgery on August 6, 2002, by Dr. Gregory Motley of Southeastern Sports Medicine. *Page 4 
3. Dr. Motley found that plaintiff had some cartilage damage and inflammation in her knee at the time of surgery, as well as chondromalacia of the kneecap and a torn ACL. The damage to the knee cap was limited and Dr. Motley stated he was unable to say if the injury to the kneecap was acute or degenerative in nature.
4. On August 18, 2004, Dr. Motley released plaintiff from his care and referred her for a second opinion on her permanent partial impairment rating. Dr. Motley noted that plaintiff should continue to use her unloader brace to attempt to delay the need for a total knee replacement. Dr. Motley also prescribed Celebrex, an anti-inflammatory, and told plaintiff to return as needed.
5. Plaintiff then saw Dr. Andrew Rudins on October 20, 2004. Dr. Rudins placed plaintiff at maximum medical improvement at that time and gave her a 22% permanent partial impairment rating and permanent work restrictions. Dr. Rudins testified, and the Full Commission finds as fact, that plaintiff will need to use orthotics on a permanent basis, that there may be gaps in treatment due to the injury being maintained by medications, and that she may need a knee replacement in the future related to her injury.
6. On September 23, 2002, plaintiff returned to work for defendant-employer and worked through 2006, at which time she voluntarily terminated her employment and has been employed with a different employer with no loss of wage earning capacity.
7. Defendant made multiple unsuccessful attempts to contact plaintiff from 2004 to the present. Plaintiff retained counsel who filed a notice of appearance by letter dated April 7, 2008.
8. After failing to receive any response from plaintiff or her counsel despite repeated requests and the service of discovery, defendant filed a Form 33 Request for Hearing and Motion *Page 5 
to Dismiss on August 27, 2008. Plaintiff failed to timely respond to the Motion to Dismiss or Defendant's First Set of Interrogatories and Request for Production of Documents. On September 22, 2008, defendant requested the claim be dismissed. No response was received to this request by plaintiff and defendant again requested that the Motion to Dismiss be granted on October 13, 2008. Plaintiff then sent a response on October 14, 2008 that was dated October 1, 2008, but no proof of service prior to October 14, 2008 was provided. Defendant again responded on October 17, 2008 and enclosed copies of all correspondence sent to plaintiff's counsel with proof of service attached.
9. Defendant eventually withdrew the Motion to Dismiss.
10. Despite being provided with Defendant's First Set of Interrogatories and Request for Production of Documents on numerous occasions, plaintiff failed to respond and on January 2, 2009, defendant filed a Motion to Compel Plaintiff's Discovery Responses with the Executive Secretary's Office. Plaintiff filed discovery responses on January 13, 2009 that were incomplete and not verified. The Executive Secretary's Office did not rule on the Motion to Compel; however, at the August 11, 2009 hearing Deputy Commissioner Hall orally granted the motion by ordering plaintiff to sign medical releases and provide all medical records.
11. Plaintiff received ongoing medical treatment in the form of prescriptions for Celebrex from her family doctor, Dr. Ronald Johnson, and orthotics from Dr. Robert Garfield. Defendant has paid for the prescription refills from the 2002 injury to the present.
12. Plaintiff sought no additional treatment from Dr. Motley or Dr. Rudins for her compensable injury from 2004 until July 15, 2009, when she saw Dr. Motley at the request of her attorney. Dr. Motley noted on July 15, 2009 that x-rays show degenerative changes in both *Page 6 
knees. Plaintiff was still taking Celebrex, as reflected in the July 2009 medical note. Dr. Motley planned to see her in six months and do x-rays to see if she was doing okay.
13. At his deposition Dr. Motley stated that as of the surgery in 2002, he expected plaintiff to progress rapidly to the need for a total knee replacement. He was amazed that plaintiff had been able to delay the surgery for seven years. Dr. Motley testified, and the Full Commission finds as fact, that it is probably inevitable that plaintiff will need a total knee replacement in the future. Dr. Motley stated his opinion, and the Commission finds, that plaintiff's need for total knee replacement is causally related to her 2002 injury.
14. Dr. Motley testified that plaintiff can continue use of the unloader brace for her entire lifetime, which may help prevent future degeneration. Dr. Motley continued to recommend plaintiff lose weight to reduce the stress on her knee and stated weight loss may reverse degenerative damage and prevent the need for future surgery.
15. Defendant offered to pay plaintiff her permanent partial impairment rating, but plaintiff declined due to her ongoing concern that she may need a total knee replacement.
16. Subsequent to the July 15, 2009 visit, Dr. Motley sent plaintiff a letter dated July 15, 2009. Plaintiff inadvertently failed to disclose this document to defendant during the discovery process or after the hearing. Defendant only learned of this letter during the deposition of Dr. Motley on October 28, 2009. It was clear from plaintiff's counsel's remarks during the deposition that plaintiff and her counsel had been in possession of the letter prior to the deposition.
17. In this letter Dr. Motley states that plaintiff's knee has done very well for six years. He further states some arthritic symptoms exist that may or may not progress over time *Page 7 
and no additional intervention was recommended for those symptoms. Dr. Motley closed by telling plaintiff to contact him if she had any problems "sooner than expected."
18. Plaintiff filed a Form 18M on July 23, 2009 that stated "she continues to have swelling and pain in her left knee and ankle and needs evaluation in reference knee replacement." Dr. Motley indicated on the Form 18M that there was a substantial risk plaintiff would need ongoing treatment including monitoring, medical and surgical hospital services, replacement of artificial members, medical and surgical supplies, and other treatment. Dr. Motley attached Celebrex and orthotic prescriptions and medical notes.
19. Defendant objected to the Form 18M on July 29, 2009 and the Executive Secretary's Office transferred the Form 18M to Deputy Commissioner Hall for consideration in conjunction with the upcoming hearing. The Full Commission finds that the 18M should be approved.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. At this time plaintiff has received all indemnity compensation to which she was entitled related to her compensable injury.
2. Plaintiff is entitled to have defendant pay for all medical treatment recommended by her authorized treating physicians that is reasonably necessary to effect a cure, provide relief, or lessen plaintiff's disability as a result of her compensable injury. The approved medical expenses include Celebrex and orthotic prescription refills, follow-up appointments, and total knee replacement when recommended by her treating physician. N.C. Gen. Stat. § 97-25. *Page 8 
3. Plaintiff and her counsel failed to comply with the Workers' Compensation Act and Rules by failing to timely comply with discovery and production of documents and therefore are subject to the imposition of sanctions. North Carolina Industrial Commission Rules 607 and 802.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay for all plaintiff's medical treatment related to the compensable injuries, including Celebrex and orthotic prescription refills, follow-up appointments, and total knee replacement when recommended by her physicians.
2. An attorney's fee of $200.00 is awarded to defendant's counsel as a sanction for plaintiff's failure to comply with discovery.
3. The 18M filed July 23, 2009 is HEREBY APPROVED.
4. Defendant shall pay the costs.
This 21st day of July, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE *Page 9 
COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1